UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Carlton H. Bernier,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 09-12167-DJC |
| ) | |
| **Michael J. Astrue, Commissioner,** ) | |
| **Social Security Administration,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                            May 13, 2011

## I. Introduction

Plaintiff Carlton H. Bernier ("Bernier") claimed Social Security disability benefits. Defendant Michael J. Astrue, Commissioner of the Social Security Administration ("the Commissioner"), issued a final decision denying his claim. Pursuant to the procedures set forth in the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), Bernier brought this action for judicial review of the Commissioner's final decision. Before the Court are Bernier's Motion to Reverse and the Commissioner's Motion to Affirm. For the reasons discussed below, the Commissioner's final decision is AFFIRMED.

## II. Factual Background

Bernier was 33 years old when he ceased working on November 1, 2006. R. 19, 24.[1] He had previously worked as a towing fleet manager, tow truck operator, and dispatcher. R. 24. He has

---

[1]Citations to the administrative record in this case, Docket #12, shall be to "R. —."

been diagnosed with chronic costochondritis (a painful inflammation of the cartilage that connects the rib bones to the sternum), asthma, chronic obstructive pulmonary disease, hypertension, severe anxiety disorder, severe depression with psychotic features, bipolar disorder, post-traumatic stress disorder, alcohol dependence (in remission), and cannabis dependence. R. 40, 341, 343, 433, 511, 606. His impairments limit his ability to lift and carry heavy objects, to sit still for a prolonged period of time, to endure extreme cold or humidity, to concentrate and carry out complex tasks, or to interact appropriately with co-workers, supervisors or the general public. R. 6, 18-19.

### III. Procedural Background

Bernier filed claims for disability insurance benefits and supplemental security income with the Social Security Administration ("SSA") on March 30, 2007, asserting that he was unable to work as of November 1, 2006. R. 225, 232. After initial review, his claims were denied on August 7, 2007. R. 126, 129. His claims were reviewed by a Federal Reviewing Official and again denied on February 5, 2008. R. 110. On February 20, 2008, Bernier filed a timely request for a hearing before an Administrative Law Judge ("ALJ") pursuant to SSA regulations. R. 139. Hearings were held before an ALJ on February 25, 2009, March 31, 2009 and July 8, 2009. R. 27, 47, 77. In a written decision dated July 22, 2009, the ALJ found that Bernier is unable to perform any of his past relevant work, but concluded that, considering Bernier's age, education, work experience and residual functional capacity, Bernier is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. R. 24-25. The ALJ thus determined that from November 1, 2006 until the ALJ decision was handed down on July 22, 2009, Bernier did not have a disability within the definition of the Social Security Act and denied Bernier's claims. R. 25. The ALJ also notified Bernier that the SSA's Decision Review Board ("the Board") selected his claim

for review. R. 12.

The Board issued its decision on October 23, 2009. The Board adopted the ALJ's determination that Bernier did not have a disability as defined by the Social Security Act. R. 8. The Board modified some of the ALJ's findings regarding Bernier's impairments and his residual functional capacity and adopted as its own the ALJ's decision as modified. R. 7. Accordingly, the Board decided that Bernier is not entitled to or eligible for disability insurance benefits or supplemental security income. R. 8. The Board's decision is the final decision of the Commissioner. R. 1.

## IV. Discussion

### A. Legal Standards

#### 1. Entitlement to Disability Benefits and Supplemental Security Income

A claimant's entitlement to Social Security disability benefits and supplemental security income turns in part on whether he has a "disability," defined in the Social Security context as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i), 423(d)(1)(a); 20 C.F.R. § 404.1505. The inability must be severe, rendering the claimant unable to do his or her previous work or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

The Commissioner must follow a five-step process when he determines whether an individual has a disability for Social Security purposes and, thus, whether that individual's application for benefits will be granted. 20 C.F.R. § 416.920. All five steps are not applied to every

applicant; the determination may be concluded at any step along the process. Id. First, if the applicant is engaged in substantial gainful work activity, then the application is denied. Id. Second, if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, then the application is denied. Id. Third, if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted. Id. Fourth, if the applicant's "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied. Id. Fifth and finally, if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted. Id.

### 2. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the decision of the Commissioner is limited. Courts must accept the Commissioner's final factual findings as conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g). "Hence, the responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his designee, the ALJ [and here, the Board]. . . . It does not fall on the reviewing court." Seavey v. Barnhart, 276 F.3d 1, 10 (1st Cir. 2001). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion." Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1991).

### B. The Findings of the ALJ and the Board

At step one, the ALJ found that Bernier was not engaged in substantial gainful work activity. R. 17 at ¶ 2. The Board adopted this finding as its own, rendering it the Commissioner's final

decision as to step one. R. 7 at ¶ 1. At step two, the ALJ found that Bernier had severe impairments, namely asthma, costochondritis, hypertension and cannabis dependence. R. 17 at ¶ 3. The Board adopted this finding and added to the list of Bernier's severe impairments alcohol abuse in remission, bipolar disorder and anxiety disorder. R. 7 at ¶ 2. The Board's list of seven severe impairments constitutes the Commissioner's final decision as to step two. R. 1. At step three, the ALJ found that Bernier's impairments did not meet the conditions set forth in the Social Security regulations that lead to an automatic grant of disability benefits. R. 18 at ¶ 4. The Board, looking at a more expansive list of Bernier's impairments, reached the same conclusion. R. 7-8 at ¶ 3. Bernier does not challenge the Commissioner's findings at steps one through three.

Bernier does dispute the Commissioner's residual functional capacity determination and its application of this determination at steps four and five. The ALJ determined that Bernier "can lift and/or carry up to 10 pounds frequently as well as twenty pounds occasionally, as well as sit still for at least 6 hours, and stand and walk for 6 hours in an 8 hour day," but that he "may only occasionally stoop, kneel and crouch," that he "cannot tolerate concentrated exposure to extreme cold, humidity, or to pulmonary irritants," and that he "has a moderate limitation in maintaining concentration, persistence and pace, such that he can understand, remember and carry out simple 1-2-3 step tasks not involving independent decision-making." R. 18-19. The Board "generally agree[d] with the parameters of the [ALJ's] residual functional capacity determination . . . but modifie[d] the finding to reflect the reasonable work-related restrictions associated with [Bernier's] mental impairments." R. 6. The Board revised the ALJ's determination to include findings that "[Bernier] can sustain adequate attention and concentration on simple, repetitive, 1-3 step tasks for two hour periods at a time in an eight hour workday; he can perform work that does not involve

5

significant contact with the general public or require more than occasional contact with supervisors and co-workers." R. 6.

Based on this determination of Bernier's residual functional capacity, the Board found at step four that Bernier is not able to perform his past relevant work as a towing fleet manager, a tow truck operator, and a dispatcher. R. 7, 24. At step five, the Board found that Bernier was a younger individual[2] with a high school education. The Board then cited to 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2, Rule 202.21, which states that a younger individual who is a high school graduate whose previous work experience involved skilled or semiskilled non-transferrable skills is not disabled, and found that on the basis of Bernier's education, age, past relevant work experience and residual functional capacity, Bernier is not disabled within the regulatory framework of the Social Security Act.[3] R. 7-8.

### C. Bernier's Challenges

Bernier's critique of the Board's conclusions appears to rest on objections to the Board's handling of Bernier's Global Assessment of Functioning scores and the Board's reliance on testimony the ALJ elicited from a Vocational Expert.

#### 1. Global Assessment of Functioning

First, Bernier argues that the Board should have awarded Bernier benefits for the period from

---

[2]Defined by Social Security regulations as "an individual age 18 through 49." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h)(1).

[3]The Board did not make a finding as to the transferability of Bernier's skills, but noted correctly that "the issue of transferability of work skills is not material." See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2, Rule 202.22 (stating that a younger individual who is a high school graduate whose previous work experience involved skilled or semiskilled transferable skills is not disabled).

6

May 2007 until March 2009, when Bernier's medications were being adjusted and he intermittently received low Global Assessment of Functioning ("GAF") scores.[4] But low GAF scores alone do not compel a finding of disability. See 65 Fed. Reg. 50746, 50764-65 (noting that "[t]he GAF scale . . . does not have a direct correlation to the severity requirements in [SSA] mental disorders listings"); see also Resendes v. Astrue, 2011 WL 669090 at *10-11,*16 (D. Mass. Feb. 17, 2011) (concluding that the Commissioner's "over-reli[ance] on GAF scores as an expression of [claimant]'s ability to work" is an error that justifies vacating the Commissioner's RFC determination and remanding for further inquiry into claimant's RFC). In any event, the lowest GAF scores Bernier received occurred at times when Bernier was using cannabis: on July 16, 2008, when Bernier received a GAF score of 26, he was "abusing marijuana daily," R. 510, 528; on August 14, 2008, when Bernier was assigned a GAF score of 30, he reported that "up [un]til about a month ago I was smoking marijuana," R. 497, 499; on March 5, 2009, when Bernier was admitted to Arbour-Fuller Hospital and assigned a GAF score of 30, he denied using marijuana, but a toxicology screen showed he had cannabis in his system. R. 563, 573. These are the only three GAF scores indicating that Bernier had an inability to function at the time of assessment; all other

---

[4]The GAF scale is used to report a clinician's judgment of an individual's overall level of psychological, social, and occupational functioning and refers to the level of functioning at the time of evaluation. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32–33 (4th ed., text rev. 2000) ("DSM-IV"). GAF scores can range from 0 to 100. Id. All of Bernier's scores were between 26 and 56; a score in the range of 21 to 30 reflects a behavior "considerably influenced by delusions or hallucinations" or "serious impairment in communication or judgment" or "inability to function in almost all areas" [the "Psychotic Range"]; 31 to 40 indicates "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood;" 41 to 50 reflects "[s]erious symptoms" or "any serious impairment in social, occupational, or school functioning" [the "Multiple Range"]; and 51 to 60 indicates "[m]oderate symptoms" or "moderate difficulty in social, occupational, or school functioning" [the "Moderate Range"]. DSM-IV 34, R. 566.

GAF scores on the record suggest that Bernier was functional with serious or moderate impairments when assessed. R. 446 (GAF score of 41), 479 (46), 511 (55), 559 (55), 606 (56). The Commissioner is obligated by statute to factor out a claimant's drug addiction when considering a claimed disability. 42 U.S.C. § 423(d)(2)(C). Further, Bernier concedes that the Board was correct in its determination that the low GAF scores Bernier received all occurred when Bernier's "medications were still being adjusted," R. 7, Pl.'s Memo at 19, and thus "do not accurately reflect the longitudinal functional impairments imposed by [Bernier]'s mental health impairments and cannabis abuse." R. 7.

Because the only evidence showing that Bernier was even temporarily unable to function mentally arose when Bernier was switching medications and using cannabis, and because all other evaluations of Bernier's mental ability showed that he was functional, substantial evidence exists to support the Commissioner's determination that Bernier has significant mental impairments that impose "mild restrictions on his activities of daily living," "moderate functional limitations on his ability to maintain social functioning," and "moderate functional limitations on his ability to maintain concentration, persistence and pace" resulting in "one or two episodes of decompensation for an extended period of time," but that these impairments nonetheless fell short of a finding of disability given the other factors in the step five analysis. R. 5.

### 2. Testimony of the Vocational Expert

Second, Bernier argues that the ALJ erred when eliciting testimony from the vocational expert ("VE") and that the Board therefore erred in relying on the VE's testimony. Specifically, Bernier alleges that the ALJ erred by failing to ask the VE about the effect Bernier's limitations on pace or his expected extended periods of decompensation, such as hospitalization, would have on

his ability to work. As to pace, the record shows that the ALJ did ask the VE about the effect of Bernier's pace limitations. R. 102-04.[5] As to decompensation, the relevant legal question is whether Bernier would be subject to "<u>repeated</u> episodes of decompensation," defined as "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks," or "more frequent episodes of shorter duration or less frequent episodes of longer duration . . . if the duration and functional effects of the episodes" justify a "finding [of] a determination of equivalence." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4) (emphasis added). The Board found that Bernier's impairments would lead to "one or two episodes of decompensation," R. 5, and "do not establish medical equivalence," R. 6, and thus were not sufficiently severe to require inclusion in hypothetical questions posed to the VE. See <u>Hutchins v. Astrue</u>, 2010 WL 3895183 at *4 (D. Mass. Sept. 30,

---

[5]Q.  Assume a hypothetical individual the claimant's age, education and vocational background capable of performing at the light exertional level with occasional stooping, kneeling and crouching; no concentrated exposure to extreme cold, humidity, or pulmonary irritants. . . . Would that allow for [Bernier's] past work?
A:  It would allow for dispatching types of work. . . .
Q:  Would it allow for other jobs?
A:  Yes . . . [e]xamples would be assembling packaging such as electronics worker, production assembler, various machine tending types of positions such as a sealing machine operator or molding machine operator. There would be jobs such as stringer and wrapper. . . .
Q:  Same hypothetical at sedentary.
A:  Sedentary . . . . Again, assembly and packaging types of work, a carding machine operator would be an example, a cutting machine operator . . . .
Q:  What about jobs in the service industry like cashiers, that sort of thing?
A:  Yes . . . . They would fit the criteria for both the light and the sedentary. . . .
Q.  <u>Now, if I add to the hypothetical that the individual would have a moderate limitation in maintaining concentration, persistence, and pace</u> . . . would that preclude the dispatcher?
A:  It would preclude the dispatching.
Q:  Would it allow for the other jobs you've given?
A.  The only other job I would preclude based on that would be the cashiering jobs.
R. 102-04 (emphasis added).

9

2010) (VE questions did not need to include issue of decompensation where claimant, "who bore the burden of proof, failed to make a successful showing of the existence of at least three episodes within a year, each lasting 14 days"). The colloquy with the VE is substantial evidence supporting the Board's determination at step five that Bernier "could perform a significant number of jobs in light and sedentary occupations in the national economy." R. 7.[6]

V. Conclusion

For the reasons discussed above, the Commissioner's final decision is AFFIRMED.

**So ordered.**

/s/ Denise J. Casper

United States District Judge

---

[6]Bernier also disputes a number of findings made by the ALJ that were not adopted by the Board. Compare Pl.'s Memo at 16-17 (arguing that "the ALJ rejected [Bernier]'s claims as not credible primarily due to his cannabis use," despite the fact that (Bernier asserts) "[t]he use of marijuana to treat intractable chronic pain has been accepted in much of the medical community and has been approved by the legislature in a dozen states") with R. 4-8 (omitting any discussion of Bernier's credibility and refusing to adopt the ALJ's fifth finding, which discussed Bernier's cannabis use); Pl.'s Memo at 17-19 (arguing that the ALJ and the medical expert called by the ALJ "both missed or ignored significant portions" of Bernier's medical records and that the assessments of individuals who treated Bernier should be entitled to more weight than the assessment of a medical expert who did not treat Bernier) with R. 4-8 (undertaking an independent review of Bernier's medical records without relying on the medical expert in question and refusing to adopt the ALJ's fifth finding, which discussed Bernier's medical records). These findings disputed by Bernier are not the Commissioner's final findings and are not the basis for the Commissioner's denial of Bernier's claims. R. 1, 4-8.

10